UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MITCHELL CLEMENTS
on behalf of himself and all
others similarly situated,

       Plaintiff,

v.

WP OPERATIONS, LLC

       Defendant

Case No.: 19-cv-1051

---

## DECLARATION OF CHRIS PETTIS

---

1. I am an adult resident of the State of Wisconsin.

2. I was employed by WP Operations, LLC ("WP") from 2016 to approximately April 2020. The last position I held at WP Operations was Rail Foreman.

3. During my employment with WP, I worked alongside hourly-paid Rail Operators, including Mitchell Clements, who I supervised for a period of time. Rail Operators primarily performed manual labor as part of WP's mining process. During my employment, I frequently worked over forty (40) hours per workweek, as did other hourly-paid Rail Operators that I supervised, including Mitchell Clements.

4. The customary daily work schedule for Rail Operators I supervised, including Mitchell Clements, was 5:45 a.m. to 6:00 p.m. on a "2-2-3" rotation.

5. During my employment with WP, Rail Operators, including Mitchell Clements, were responsible for recording hours worked each workday by "clocking in" and "clocking out" using WP's electronic time clock located in the break trailer.

6. WP policy to hourly-paid employees, including Rail Operators, was that they were not permitted to clock in more than seven minutes prior to their scheduled shift start time. In practice, Rail Operators I supervised customarily clocked in at or near 5:40 a.m. each workday. If at any time an employee was asked to work before or after their scheduled work time, an email was sent to WP's Administration Office and HR with justification of why the employee work outside of the schedule and to confirm that it was approved by the on-site Foreman.

**PL0142**

7. As a part of my job duties, I was required to conduct safety meetings each workday. During these meetings I provided important safety information as well as daily assignments to Rail Operators, including Mitchell Clements. These meetings normally began at 5:45 a.m or shortly thereafter, although, a few meetings may have begun a few minutes prior.

8. When the meetings ended, employees customarily went to their respective work areas. Work areas were often 2-3 minutes away by either foot, ATV, or truck.

9. To the best of my knowledge and recollection, I declare under the penalty of perjury that the above statement is true and correct.

Dated this 24th day of July, 2020

_____
Chris Pettis

**PL0143**