IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MITCHELL CLEMENTS,
on behalf of himself and all
others similarly situated,

      Plaintiff,      OPINION AND ORDER

v.

                 19-cv-1051-wmc

WP OPERATIONS, LLC,

      Defendant.

On behalf of himself and other similarly situated, putative plaintiffs, Mitchell Clements claims that defendant WP Operations, LLC, violated the Fair Labor Standards Act ("FLSA") and Wisconsin's wage payment and collection laws. The parties have stipulated to certify a class (dkt. #71) under Fed. R. Civ. P. 23 and have jointly moved for preliminary approval of a settlement agreement. (Dkt. #72.) For the reasons that follow, the court will grant the motion and will hold a fairness hearing on December 20, 2022, at 1:00 p.m.[1]

BACKGROUND

Plaintiff seeks to certify the following Rule 23 subclasses for settlement purposes:

> **Railcar Operator Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's

---

[1] Given that the parties have agreed to a settlement, plaintiff's prior motion to certify the class under rule 23 (dkt. #45) will be denied as moot, as will defendant's motion for leave to file an amended answer (dkt. #53).

electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

**Production Employee Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017 and continuing through the present in the State of Wisconsin in any position other than the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked

The parties have also stipulated to the following FLSA collectives for settlement purposes:

**Railcar Operator Collective**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

**Production Employee Collective**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in any position other than the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

(Stipulation (dkt. #71) 2.)

WP asserts that there are 254 Production Employees and 53 Railcar Operators who comprise the settlement. (Mot. to Appr. Sett. (dkt. #72) 18.) Defendant will pay a gross settlement amount of $112,005.00, which will include any attorney fees and costs.

(Settlement Agreement (dkt. #73) 3.) Of that amount, each subclass and collective would receive no more than: $7,652 for the Railcar Subclass, $10,408.50 for the Production Subclass, $2,709 for the Railcar Collective, and $6,235.50 for the Production Collective. (Settlement Agreement (dkt. #73) 10.)

Any member of the Rule 23 class who does not exclude himself will be entitled to a portion of the settlement fund. (Mot. to Appr. Sett. (dkt. 72) 7.) Members of the FLSA collectives will only be entitled to a portion of the fund if they file an Opt-In Consent Form. (Id.) Finally, all remaining funds from excluded individuals or uncashed checks will revert to WP. In addition to this class relief, defendants agree to pay class counsel's attorneys' fees and expenses up to $80,000. (Id. 8.)

## OPINION

### I. Class Certification

Certification of a class is only appropriate following a rigorous analysis concerning whether the proposed class satisfies Federal Rule of Civil Procedure 23. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). Plaintiff has the burden to show that a class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). This analysis encompasses a two-part test: (a) whether the proposed class meets all four prerequisites of Rule 23(a) to establish the class; and (b) whether the class can be maintained under one of the subsections of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The court will address the Rule 23(a) prerequisites before considering Rule 23(b)(3).

## A. Rule 23(a) Prerequisites

The prerequisites under Rule 23(a) -- numerosity, commonality, typicality and adequacy of representation -- determine whether a class may be established. Fed. R. Civ. P. 23(a). First, a class must be so numerous that it is reasonable to believe that joinder would be impracticable. *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). The Seventh Circuit has previously concluded that a forty-member class may be sufficient to satisfy the numerosity prerequisite. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Here, the putative class consists of at least 254 production employees and 53 railcar operators. Heeding the Seventh Circuit's guidance, the court agrees that individually joining members of a class this size would be impractical. Accordingly, this prerequisite is met.

Second, a class must have questions of law or fact in common. Fed. R. Civ. P. 23(a)(2). A class must not just suffer violation of the same provision of law, but instead have a common injury whose resolution is "central to the validity of each one of the claims in one stroke." *Lacy v. Cook Cty., Ill.*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, plaintiff argues that the class members' claims arise from two practices, which the parties agree are common questions for the purposes of settlement. (Mot. to Appr. Sett. (dkt. #72) 19-20.) The two practices are: (1) incentivizing or requiring class members to attend pre-shift meetings or conduct pre-shift inspections without compensating for the work performed; and (2) depriving class members of compensation by programming defendant's timekeeping system in a way that failed to account for post-shift hours worked. (Id.) The court agrees with plaintiff that

the putative class members share these common questions of fact and related questions of law.

Third, typicality requires that the proposed class representative has claims typical of the claims of the proposed class, such that his claims arise from the same event or course of conduct that gives rise to the claims of other class members. Fed. R. Civ. P. 23(a)(3); *Lacy*, 897 F.3d at 866 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Typicality ensures that a plaintiff litigating his own self-interest will also advance the interests of the class. *Lacy*, 897 F.3d at 866. This requirement is also satisfied here because each class member's claim -- including named plaintiff Clements' claim -- arises from defendant's timekeeping practices and alleged undercompensation. As such, Clements' pursuit of his claim would advance the interests of the entire class. While the fact that Clements is a railcar employee raises some doubt as to his ability to represent the production employees, this is not necessarily disqualifying, although the proposed higher *pro rata* payout to railcar employees will have to be justified before final approval of the class representative and proposed settlement can occur.

Fourth, adequacy requires the putative class representative and class counsel to fairly and adequately protect the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). A class representative is not adequate if his interests conflict with those of other class members. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Here, Clements is adequate to represent the proposed class because he has the same interest as the other class members to be fairly compensated for his hours worked subject to the same caveats addressed immediately above as to the third prerequisite. As to counsel's adequacy,

plaintiff's counsel Walcheske & Luzi, LLC has been appointed class counsel in several other similar actions, suggesting that counsel is able both to litigate and settle successfully the case at hand. (Mot. to Appr. Sett. (dkt. #72) 21-22.)

### B. Rule 23(b)(3) Requirements

Since all the Rule 23(a) prerequisites are met, the court turns to the superiority and predominance requirements under Rule 23(b)(3). These requirements determine whether an established class may be maintained under Fed. R. Civ. P. 23(b). Under Rule 23(b)(3) in particular, certification requires the class have "questions of law or fact common to class members [that] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Relevant considerations include: class members' interest in individually litigating their claims, the extent and nature of class members' preexisting litigation regarding the controversy, the desirability of concentrating the litigation in a particular forum, and the difficulties of managing a class action. *Id.*

The presence of individual questions does not prevent a common issue from predominating unless those individual questions overwhelm the questions common to the class. *Bell*, 800 F.3d at 378–79; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). Predominance exists where a class representative's general allegations and common evidence establishes a *prima facie* case for the class. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

6

Here, all putative class members are challenging a uniform policy for how defendant calculated pre- and post-shift compensation. *See Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003) (finding "the case law suggests that when the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate.") While each employee does have some level of individualized damages, it is "clear that individualized monetary claims belong in Rule 23(b)(3)," making class litigation the proper vehicle to obtain a successful recovery. *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2558 (2011). Accordingly, the court finds that the common issues of fact and law associated with these claims predominate over any individual issues.

The final requirement is that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). This requirement is intended to ensure that a class action is the preferred method to "achieve economies of time, effort, and expense, and promote uniform decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). The putative class members here *all* claim the same injury, which would be largely proven by similar evidence. Therefore, a single proceeding to determine whether defendant engaged in a pattern of undercompensation is plainly superior to the possibility of duplicative, individual adjudication of each class member's claim, particularly since putative class members would have little incentive to litigate separately in light of the fact that any individual underpayments were generally small. Indeed, with individual damages of less than $50,

7

separate litigation is not likely to be worthwhile or economical for individual class members.

Since the Rule 23(a) and Rule 23(b)(3) requirements are readily satisfied, class certification will be granted, and plaintiff Mitchell Clements and Walcheske & Luzi, LLC will be preliminarily appointed as class representative and class counsel, respectively.

## II. FLSA Collective Action

In *Austin v. Cuna Mut. Ins. Soc'y,* 232 F.R.D. 601 (W.D. Wis. 2006), this court adopted a two-step process for collective actions under the FLSA. At the initial, conditional step, the plaintiff need only make "a modest factual showing" that: (1) he is similarly situated to potential class members; and (2) both he and the potential class members were "victims of a common policy or plan that violated the law." *Id*. at 605. Specifically, the parties jointly propose a Railcar Operator collective and a Production Employee collective. Plaintiff and the defendant agree that plaintiff made this modest factual showing for conditional certification of a FLSA class, as shown by the previous analysis. Given plaintiff's similarity to potential class members and the parties agreement that plaintiff has some chance of successfully showing that he and other members of the proposed class were injured by WP's alleged failure to pay workers for pre- and post-shift hours worked, the court will conditionally certify the proposed FLSA collective.

**III. Preliminary Settlement Approval**

Settlement approval begins with a preliminary determination that the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Following preliminary approval, the second step is a fairness hearing to give class members an opportunity to be heard. *Id.*

A district court may approve a settlement that is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Considerations for court approval include: the strength of the plaintiffs' case compared to the settlement offer; the complexity, length, and expense of further litigation; any opposition to the settlement; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

The first and primary concern is the strength of the plaintiffs' case as compared to the proposed settlement. *Kaufman v. Am. Express Travel Related Servs.*, 877 F.3d 276, 284 (7th Cir. 2017). This factor does not instruct district courts to resolve the merits of the controversy, but instead to establish whether the settlement "reasonably reflects the relative merits of the case." *Id.* at 285. Here, the parties estimate that members of the Railcar Collective will receive $50 per person, while Production Collective members will receive about $25 per person. (Mot. to Appr. Sett. (dkt. #72) 13.) This equals about 100% of the Railcar Class members' past-due wages and 68% of the Railcar Collective members' past due wages. (Id.) For production employees, class members will receive about 50% of their past due wages and collective members will receive 38% of past due

9

wages. (Id.) While the court notes that the amount per claimant will be small in this case at $50 or less per person, it appears that amount will reimburse some portion of the claimants' past due wages for the relevant time period. Finally, defendants dispute whether the alleged violation was willful or whether liability exists at all, bringing the exact amount of damages that could be claimed into doubt.

However, as previously noted, the court is concerned that the railcar employees will recover a substantially higher percentage of their wages than the production employees without explanation, especially since Mitchell Clements, the sole proposed class representative, is not a member of the production employee subclass. (Compl. (dkt. #1) ¶ 15.) This creates at least an impression that railcar employees were favored over production employees. While the parties state that, "[t]he monetary value for each individual member of the Settlement Class was determined through exhaustive review of Defendant's timekeeping records and payroll records by Plaintiff's expert witness, Nicholas J. Romans, CPA," the parties do not explain the discrepancy between the two types of employees. (Mot. to Appr. Sett. (dkt. #72) 12-13.) To the extent the court approves this proposed settlement preliminarily, the parties should be prepared to explain this difference.

While this factor weighs somewhat against approval, the court still finds that most factors weigh in favor of settlement. For instance, the complexity, length and expense of further litigation all weigh in favor of settling. Further litigation to resolve plaintiff's claim involves expenses to both parties, while the proposed settlement substantially reimburses class members without the hardships of continuing litigation. In addition, the court will consider any specific opposition to or request for exclusion from this proposed class

settlement once class members have been notified of the proposed settlement.[2]  The proposed notice to class members outlines how class members can object or be excluded from the settlement.  Because the process for class members to oppose the settlement awaits, this factor does not currently weigh for or against preliminary approval of the settlement, but does require that the notice disclose and explain the reasons for the apparent disparity in the recovery by the two subclasses at least on a percentage basis.

Finally, this court is generally reticent to approve the amount of any uncashed checks and attorneys' fees and costs reverting to the defendant, especially without information regarding the likely reversion rate and actual fees since this, too, can be a red flag that the class members interests' have not been fully considered.  Still, the settlement was reached through arm's-length negotiation.  Therefore, the competency of class counsel and stage of these proceedings favor preliminarily approving the proposed settlement, subject to concerns about the treatment of the production employee subclass and compensation to class counsel addressed below.  Because the preliminary factors overall suggest that the parties' proposal is fair, reasonable and adequate, however, the court will approve the preliminary class action settlement and authorize the mailing of notice as detailed below.

---

[2] On occasion, and generally at final settlement approval, the Seventh Circuit encourages consideration of the reaction of members of the class to the proposed settlement.  *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

**IV. Incentive Award and Attorneys' Fees**

The court next addresses the validity of the named plaintiff's incentive award and counsel's request for attorneys' fees. The settlement provides named plaintiff Mitchell Clements with a $5,000 incentive award. (Settlement Agreement (dkt. #73) 11.) Such an incentive award is not exceptional as a form of compensation given the extra work a named plaintiff performs in class action lawsuits. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000). Of course, the appropriate *amount* of an incentive award depends on "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). At least at this preliminary stage, a $5,000 incentive award appears generally reasonable in light of Clements' assistance to counsel in initiating and pursuing this action. However, the parties should be prepared to explain specifically what Clements did to assist in this action, as the Seventh Circuit has approved lower incentive awards where the "exertion the named plaintiffs expended in pursuing [the] action" was minimal. *Camp Drug Store*, 897 F.3d at 835.

As to attorneys' fees, the parties have proposed that class counsel be awarded $80,000 in attorneys' fees and expenses and suggest this is far less than Class Counsel's fees and costs to date. (Mot. to Appr. Sett. (dkt #72) 17.) In determining appropriate attorneys' fees, courts have discretion to use either the lodestar method or percentage method. *Americana Art China Co. v. Foxfire Printing & Packaging*, 743 F.3d 243, 247 (7th

Cir. 2014). The lodestar method roughly estimates "the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

Here, class counsel adopts the lodestar method to calculate and justify its attorneys' fee request. However, given class counsel is seeking almost three times the total amount that defendants have agreed to pay to class members in settlement, the proposed fee amount requested is of *significant* concern to the court. While in an "exceptional settlement," an award significantly more than the amount the class receives may be appropriate, *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015), the recovery of lost wages does not seem to be "extraordinary," especially for production employees. As such, the court is skeptical that an $80,000 fee is justified, despite the hours plaintiff's counsel allegedly put into the case. In fairness, the parties suggest that "[b]ecause this matter does not involve the payment of attorneys' fees and costs as a percentage of a common settlement fund, this Court does not need to apply common fund principles in order to approve Class Counsel's attorneys' fees and costs." (Mot. to Appr. Sett. (dkt #72) 17.) However, it seems prudent to look at the attorneys' recovery relative to the class as test for self-dealing.

Despite significant concerns, the court will nevertheless allow the parties to issue notice to the class of this proposed settlement subject to further scrutiny of class counsel's application for attorneys' fees, including submission of counsel's actual hourly billing records and rates.

**V. Proposed Notice**

Finally, as noted above, the court will authorize class counsel to send notice to members of the class. Notice to all members of a Rule 23(b)(3) certified class must include: (1) the nature of the action; (2) a definition of the certified class; (3) the class claims, issues, or defenses; (4) the option for class members to appear through counsel; (5) the option for class members to be excluded; (6) the time and manner to request exclusion; and (7) the effect of a class judgment on the members. Fed. R. Civ. P. 23(b)(2)(B). Here, the proposed notice provides class members with information regarding the nature and claims of the action, a definition of the classes and collective, class members' option to appear through counsel, and the availability and process for exclusion or objection. Furthermore, the notice details the option for class members to be excluded and the effect on members of a class judgment.

Still, the court notes the following modifications on pages 4 and 5 of the proposed notice that class counsel should make before sending it out:

- Under "**Payments to Participants**" on page 4, two additional sentences should read that: "However, generally speaking, Railcar Subclass members are expected to collect about 100% of their past-due wages while Production Subclass members are expected to collect about 50% of their past-due wages. Similarly, the breakdown for the Railcar and Production Collectives will be about 68% and 38% of past-due wages, respectively."

- Under "**If You Object**" on page 5, the notice should simply require class members to send objections to the court and include the court's contact

14

information. Class members should not be required to send the objection to counsel; instead, the court will docket any objections it receives for both sides' information.

ORDER

IT IS ORDERED that:

1) Plaintiff's motions to certify the class under rule 23 (dkt. #45) and defendant's motion to file an amended answer (dkt. 53) are DENIED AS MOOT.

2) Plaintiff's unopposed motion for preliminary approval of settlement agreement (dkt. #72) is GRANTED.

3) The court CERTIFIES the following Rule 23 classes for settlement purposes:

   **Railcar Operator Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

   **Production Employee Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017 and continuing through the present in the State of Wisconsin in any position other than the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked

4) The court CERTIFIES the following FLSA collectives for settlement purposes:

   **Railcar Operator Collective**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

   **Production Employee Collective**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in any position other than the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

5) This case is conditionally certified as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act for purposes of discovery and sending notice to the putative plaintiffs as defined above;

6) Plaintiff Mitchell Clements is APPOINTED class representative and Walcheske & Luzi, LLC is APPOINTED as class counsel.

7) The proposed notice attached as Exhibit B to the Settlement Agreement (dkt. #73-1) is APPROVED and class counsel is AUTHORIZED to distribute it as provided in the parties' submissions SUBJECT TO ADOPTION of the modifications specifically set forth above in this Opinion.

8) The court approves the following settlement procedure and timeline:

   a. no later than October 7, 2022, the Settlement Administrator shall begin mailing the notice to class members consistent with the opinion above;

   b. class members shall have until 45 days after mailing of notice to submit a request to be excluded or any objections;

   c. no later than November 28, 2022, class counsel shall file a petition for attorneys' fees and costs;

   d. no later than December 5, 2022, class counsel shall provide the list of excluded class members to defendant's counsel;

    e.  a motion for final approval and any briefing in support, as well as any objection to class counsel's fee petition are due on or before December 12, 2022; and

    f.  the court will hold a fairness hearing on December 20, 2022 at 1:00 p.m.

Entered this 6th day of September, 2022.

                            BY THE COURT:

                            /s/

                            _____
                            WILLIAM M. CONLEY
                            District Judge