IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MITCHELL CLEMENTS,
on behalf of himself and all
others similarly situated,

                Plaintiff,

v.

WP OPERATIONS, LLC,

                Defendant.

ORDER FOR FINAL APPROVAL
OF SETTLEMENT AND
JUDGMENT

19-cv-1051-wmc

---

On behalf of himself and other similarly situated, putative plaintiffs, Mitchell Clements brought suit claiming that defendant WP Operations, LLC, violated the Fair Labor Standards Act ("FLSA") and Wisconsin's wage payment and collection laws. The parties stipulated to certify a class (dkt. #71) under Fed. R. Civ. P. 23. On September 6, 2022, the court granted preliminary approval for the settlement agreement while expressing concern about the size of class counsel's requested fee award, the reversion clause favoring defendant, and the disparity between the award amounts for railcar operators and production employees, especially since the class representative was a member of the arguably favored sub-class. (Dkt. #74.) Given the parties' assertions at the final approval hearing held December 20, 2022, and subsequent filings, the court will now grant final approval of the proposed settlement.

FACTS

The court previously certified railcar operator and production employee sub-classes and sub-collectives. At the final approval stage, the parties jointly requested that the court give final certification of the following sub-classes:

> **Railcar Operator Sub-Class**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

> **Production Employee Sub-Class**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017 and continuing through the present in the State of Wisconsin in any position other than the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.

The parties also request final certification of the following collectives for settlement purposes under 29 U.S.C. § 216(b):

> **Railcar Operator Sub-Collective**: Those fourteen (14) hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked and whose Consent to Join Forms were filed with the Court, ECF Nos. 1, 7, 75 and 76.

>**Production Employee Sub-Collective**: Those thirty-four (34) hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in any position other than the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked and whose Consent to Join Forms were filed with the Court, ECF Nos. 75 and 76.

Excluding the plaintiff, the proposed settlement class included 53 railcar operators and 253 production employees. (Parties' Mem. (dkt. #84) 9.) Of 306 putative settlement class members, 45 returned their consent to join forms, equaling about 15% of the potential class. (*Id.*) Of that number, 11 of the consenting members are railcar operators and 34 are production employees, which is similar to the ratio of railcar to production employees in the whole class. (*Id.* 10.)[1] The parties are not aware of any objections or request to be excluded from the settlement agreement, nor is the court.

Each class member will be paid as set forth in the expert report of Nicholas J. Romans, CPA, as follows. Specifically, Railcar Operators will be compensated under Schedule 3.1, which assumes that one minute of pre-shift "gap time" per workday was compensable, and all post-shift "gap time" per workday was compensable. (Romans Exp. Rep. (dkt. #65) 39.) Production Employees will be paid under Schedule 2.0, which assumes that no pre-shift "gap time" per workday was compensable, and all post-shift "gap time" per workday was compensable. (*Id.*)

---

[1] By agreement of the parties, the railcar operator sub-collective includes one operator, Timothy Powell, who submitted his opt-in after the deadline; and the production subclass also includes two employees, Nicholas Sandoval and Justin Sanders, who submitted late opt-ins. (*Id.* 28.)

Based on the notice of mailing, only 3% of notices to class members were returned as undeliverable, and the parties do not anticipate a significant number of members leaving their checks uncashed. (Parties' Mem. (dkt. #84) 13-14.)

OPINION

I. Payment for Class Members

At preliminary approval, the court expressed some concern about the fact that railcar employees will receive a higher percentage of their wages than production employees. (Opinion (dkt. #74) 10.) This concern is heightened by the fact that named plaintiff and class representative Clements is a railcar employee, raising the specter of possible bias. In subsequent submissions and at the final settlement approval hearing, however, the parties demonstrated that this difference is explained by the evidence supporting recovery by production employees being weaker than that for railcar employees. In particular, plaintiff's expert found that defendant had rounded clock-in and clock-out time for all employees' scheduled shift start and end times, but plaintiff would also have to prove that the employees performed compensable work during any "gap time." (Parties' Mem. (dkt. #84) 6.) While the evidence was strong that railcar employees were incentivized to perform work during the pre- and post-shift gap time, there was a lack of evidence that production employees performed compensable work, at least during the pre-shift gap time. (Id.)[2] This disparity in evidence and litigation risk led the parties to agree to a distribution where railcar employees received more of the settlement funds than the

---

[2] There was evidence that at least some of the production employees performed compensable work during the post-shift gap time. (Id.)

production employees, assuming that railcar employees performed uncompensated pre- and post-shift work while production employees only did uncompensated post-shift work. (*Id.* 7.) This allocation of funds appears to be a reasonable accounting for these evidentiary differences.

The court was also concerned that any uncashed checks would revert to the defendant. At the final hearing, the parties acknowledged that they cannot determine how many checks will remain uncashed, but still do not expect a significant amount. However, given the court's continued concern that the reversion may make the settlement more attractive to plaintiffs' counsel and defendant, than to the class members, the parties jointly agreed to amend the settlement agreement. (Joint Rep. (dkt. #89) 1.) As amended, "to the extent that the total amount of funds from Class Members' uncashed checks exceeds 5% of the total payment . . . WP OPS will donate such amount to The Gleason Initiative Foundation, a 501(c)(3) charity." (*Id.*) The charity provides support to individuals with Amyotrophic Lateral Sclerosis ("ALS") and appears to be a reputable charity. Team Gleason Foundation, Charity Navigator, https://www.charitynavigator.org/ein/453689316 (last visited Jan. 5, 2023). This alleviates the court's concern that defendant would receive a windfall from the reversion of uncashed checks.

## II. Attorney Fees

The parties propose that class counsel be awarded $80,000, which was calculated using the lodestar method and is less than class counsel's fees and expenses of $116,052.21. In support of the fees, plaintiff's counsel provided documentation of its standard rates, charging $400 for hours worked before April 1, 2022, and $450 per hour afterwards. (Br.

in Support (dkt. #78) 7-8.)  In total, plaintiff's counsel spent 319.50 hours litigating this case.  (*Id.* 9.)

The court's concern was that $80,000 is far more than the total amount the class members will receive.  Certainly, class counsel may deserve an award exceeding the class's recovery where it negotiated an "exceptional settlement," *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015), but that did not seem to be the case at the time of the court's preliminary approval of class settlement.  However, at final approval, the parties clarified that each class member will be compensated for 100% of their post-shift time worked, with railcar operators also compensated for 1 minute of pre-shift time worked.  Thus, this so-called "full recovery" for the class members is arguably similar to *In re Sw. Airlines,* where class members received a drink coupon.  799 F.3d 701.  Although the drink coupon was worth little, that settlement was deemed exceptional because it "actually makes the class whole.  When counsel come away from the negotiating table with everything the client could hope for, they should be compensated accordingly." *Id.* at 712.  The additional explanation suggests that the employees were fully compensated, making the requested fee award reasonable under the circumstances.

ORDER

IT IS HEREBY ORDERED and ADJUDGED that:

1.  Pursuant to Rule 23 (a) and (b)(3) and for the purposes of settlement only, the Settlement Class is CERTIFIED as follows:

> **Railcar Operator Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked.
>
> **Production Employee Subclass**: All individuals who were hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2017 and continuing through the present in the State of Wisconsin in any position other than the position of Railcar Operator (or Railcar Lead Operator, to the extent such a separate title designation is made in Company records), who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked

2. For the purposes of settlement, the following FLSA sub-collectives are CERTIFIED pursuant to 29 U.S.C. § 216(b):

> **Railcar Operator Sub-Collective**: Those fourteen (14) hourly-paid, non-exempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions and/or Ulti-Pro (or UKG), to track or record their hours worked and whose Consent to Join Forms were filed with the Court, ECF Nos. 1, 7, 75 and 76.
>
> **Production Employee Sub-Collective**: Those thirty-four (34) hourly-paid, nonexempt employees employed by or working at Defendant, WP Operations, LLC, between December 26, 2016, and continuing through the present, in the State of Wisconsin in any position other than the position of Railcar Operator or Railcar Lead Operator, who utilized Defendant's electronic timekeeping system(s), Orbit Solutions

and/or Ulti-Pro (or UKG), to track or record their hours worked and whose Consent to Join Forms were filed with the Court, ECF Nos. 75 and 76.

3. For purposes of settlement, the named plaintiff is DESIGNATED the "Class Representative" of the sub-classes and collectives.

4. For purposes of settlement, the court APPOINTS the attorneys at Walcheske & Luzi, LLC as "Class Counsel."

5. If the parties' settlement terminates for any reason, the certification of the Settlement Classes and Collectives shall be automatically vacated, null and void, and the above-styled action shall revert to its status immediately before the execution of the Settlement Agreement.

6. The court APPROVES this proposed final settlement as fair, reasonable, and adequate and in the best interest of the settlement class members, particularly understanding that the defendants dispute the validity of the claims asserted and their dispute underscores the uncertainty of the outcome.

7. The court DISMISSES WITH PREJUDICE the WWPCL sub-classes and FLSA sub-collectives members' released claims as set forth in the Agreement;

8. The court DISMISSES WITHOUT PREJUDICE the FLSA Claims of the FLSA sub-collectives members who did not properly and timely include themselves in the FLSA Collective in full accordance with the procedures set forth in the Agreement;

9. Defendant's Notices of Proposed Class Action Settlement satisfies defendant's obligations to provide notice to the appropriate Federal and state officials pursuant to 28 U.S.C. §1715 and 29 U.S.C. §1715(e) does not apply to the Agreement.

10. The court also APPROVES payment of attorneys' fees and costs to class counsel in the amount of $80,000.00 to be paid by defendants separate from the Settlement Amount.

11. The court APPROVES a service award of $5,000 to plaintiff Clements consistent with the Agreement.

12. Upon the entry of this Final Judgment, plaintiff and each and all of the settlement class members are hereby permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against defendants in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all released claims, as well as any other claims arising out of, relating to or in connection with, the defense, settlement, or resolution of this lawsuit or the released claims.

13. The court retains jurisdiction to consider all further matters arising out of or connected with the settlement, including the implementation and enforcement of the Settlement Agreement.

Dated this 17th day of January, 2023

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Court Judge

Entered this 19th day of January, 2023.

s/V.Olmo, Deputy Clerk
JOEL TURNER
Clerk of Court